Good morning, your honors. I've reserved three minutes for rebuttal. Your honors, this is a tale of two summary judgment decisions, the first a denial and the second a grant. In the first, the district court said that the defamation elements under Ohio law were met, including that SBA's statement about Driehaus was capable of defamatory meaning. SBA then hired Mr. Carvin, a noted First Amendment lawyer, and filed a renewed motion, this time raising the First Amendment and urging the district court to adopt exactly the categorical rule that it eventually announced. Political candidates can't bring defamation claims even for intentional lies about them if the lie associates them with a mainstream political position. The court didn't say that under the circumstances of this particular case, SBA List's statement couldn't have defamatory meaning. It said just the opposite at PID 1540 to 1542. But in its second order, it laid down a categorical new rule, quote, associating a political candidate with a mainstream political position, even if false, cannot constitute defamation. Now, in adopting this new categorical rule, the district court said in its first summary judgment decision it had mistakenly focused on the trees, the elements of defamation under Ohio law, and missed the forest. The forest it missed, the court explained, quote, is the right to free speech under the First Amendment, even false speech, when it applies to politics. So in the district court's view, the First Amendment, and particularly Alvarez and Snyder, which came along after this case was filed, were the game changers. We submit it's only right for the court to review this as a new categorical constitutional rule. And viewed as such, the district court impermissibly carved out two new exceptions to New York Times versus Sullivan. One of them, status-based, it treats candidates differently from all other public figures contrary to monitor patriot. And the other exception, content-based, in that if the court finds that the statement associates the plaintiff with, quote, a mainstream political position, then it is, the plaintiff is essentially rendered libel-proof. Now, it's difficult to imagine a squishier concept than one that depends on what is mainstream at any given moment. Is mainstream, for example, limited to a particular geographic area? We're standing in Congressman Treehouse's district. Is it what's mainstream here or statewide or is there some nationwide standard for what's mainstream? Remember that in New York Times versus Sullivan, Mr. Sullivan was a city commissioner in charge of the police. He was accused of supporting the segregationist tactics of the police. There's nothing you can imagine more mainstream than segregation in 1964 Alabama. But that was not what the Supreme Court conceived as the test. The Supreme Court conceived actual malice as the test necessary to provide breathing room that the First Amendment requires. So here the district court has gone way beyond New York Times versus Sullivan in carving out another exception that it believes is necessary to provide the same breathing room. Is mainstream time-sensitive? Could it change even in the course of a given case? A year ago, no one had heard about ISIS. Now we all have opinions about ISIS. And finally, who gets to decide what's mainstream? Is it a question of fact on which the defamed can present evidence or does the judge just divine what's mainstream? And if so, how? By reading polls at the time the Affordable Care Act was passed, one poll said that 40% of Americans wanted the federal government to stay out of Medicare. Do we ignore the fact that Medicare has always been a federal government program and ascribe that to a mainstream political view that would render someone libel-proof? As the court conceived, the test that the district court has envisioned goes way beyond what's necessary. Maybe. What about, though, what they call the innocent construction doctrine? As long as it's non-defamatory, as long as it expresses a view about which there might be reasonable differences of opinion? Well, first, this court in Connaughton and in the Ohio cases that interpret that doctrine has said you read the statements in the sense in which the readers to whom they were addressed would ordinarily understand it. Here, SBA has pointed out no words that are capable of a different understanding than the district court gave them. The district court said includes means that it's in the law. Taxpayer funding of abortion is a very clearly understood firm that this anti-abortion organization has used for decades. There are no mysteries as to what these terms mean. Voted for, it was clear they were saying he voted for the bill that the bill had the provision in it, and the bill doesn't have the provision. Right, but there are reasonable differences of opinion of whether taxpayer funded abortion is good or bad, right? The district court disagreed. He said there are no other reasonable interpretations of that. He said the only reasonable interpretation of that statement is that it is in the law and it is not in the law. So all the people who think, because Susan B. Anthony list isn't the only bunch of people who think that taxpayer funded abortions exist because of Obamacare, all those people are just unreasonable? All of those people are in the same category as the people who believe that the government should stay out of Medicare. They're simply misinformed, and the courts in Ohio have never said that... I'm finding that it difficult to think that should connotes a piece of misinformation. You mean in terms of people misunderstanding that Medicare is a government program? That's just my analogy. Well, that statement could just as easily be interpreted rather than misinformed that Medicare is a government program. It could be interpreted as a conclusion that the government should stay out of health care altogether, that Medicare shouldn't exist in the first place. I mean, whether that's reasonable or not, given the situation today, might be another matter. But should stay out of Medicare cannot in and of itself be given only one interpretation. Let's go back to the words that we're actually concerned about here that he voted for. Well, it was your example, not mine. No, fine. But they said that he voted for a bill that includes taxpayer funding of abortion. The district court held there's only one way to reasonably interpret the word includes, that it's in the law. Taxpayer funding of abortion. He said there's only one way to interpret that, that the law designates money and directs it to abortion. Congress knows how to appropriate funds for abortion. This would be the first case under the interpretation that's being suggested might be reasonable. This would be the first case that Congress ever appropriated money for something without ever mentioning it. So I don't think that the innocent construction, to go back to your question, Judge Gilman, I don't think it has any place here because SBA has never pointed to a particular word that it used that is equivocal or subject to more than one interpretation. I think the district court got it exactly right on that. Where the district court went wrong is in trying to develop this categorical rule that associating a candidate with a mainstream political party. Well, let's assume you're right. Let's say the district court has gone beyond what anybody else has done. What about, though, why is this maybe just non-defamatory under Ohio law? Well In particular, there's a case from Kansas that interests me, Hine v. Lacey, a 1980 decision where a state senator sues the chairman of another party, claiming that on a flyer indicating he had voted for decriminalization of marijuana and homosexuality, when in fact his position was just the opposite. So it seems to me fairly similar to your case, and they held non-defamatory. I think in that case they also held that the statement was literally true, but I think the difference here is we have an actual vote that is being ascribed to him that he did not characterize, falsely characterized. That strikes me as somewhat similar to this Hine v. Lacey. I think the district court distinguished Hine v. Lacey because it did not set down a hard and fast rule, and here SBA was advocating for a hard and fast rule. He said in his first summary judgment that Hine v. Lacey did not apply. Now, I recognize in his second summary judgment decision, he cited Hine v. Lacey, but not because it set down a categorical rule against associating someone with a... It's obviously like the first decision of the district court much better than the second, right? I'm sorry? Like the first decision much better than the second. Well, I think the first decision gives Hine its proper analysis, and the second associates it with a rule that Hine never expresses. And none of the cases that are cited in that second decision express the categorical rule. Cox v. Hatch, for example, those are postal workers who are being associated with a Republican senator. It would be unfounded for anyone to regard abortion as equivalent in this community to all of the other issues that might comprise a candidate's scorecard elsewhere in the country. On the west side of Cincinnati where Mr. Driehaus lived and earned his reputation, abortion stands above all other issues in terms of the extreme views that it engenders. It bears remembering that three abortion clinics were targeted with firebombs on the same day here, that the theory about a rape victim's body willing away pregnancy was developed here, and that candidates here are judged solely by whether they toe a strict anti-abortion line. So saying that he is a betrayer of his pro-life principles was, as Mr. Driehaus says in his affidavit, uncontested, the equivalent of accusing him of a heinous crime. There is no other evidence. So simply what the district court had to do was to superimpose its own views on this community, and that's directly contrary to the Connaughton decision of this court, which says that what the court needs to do is to interpret and read the statement as if it were a reader to whom it was directed. The readers to whom it was directed here take abortion more seriously than any other, and what he was accused of was the equivalent of a heinous crime. Thank you, Your Honors. I see my time is up. Good morning, Your Honors. Michael Carvin for Appellants. Contrary to my opponent's arguments, this was a very straightforward ruling under Ohio, very well-established Ohio common law. Sweeney and Howell... Well, the district court did attempt to tether, or did tether it to the First Amendment. Well, but he cited six common law cases, and he certainly discussed the First Amendment the same way we discussed it in our briefs, in two ways. One is to distinguish, to explain why the common law doesn't get into public policy debates. All the common law gets into is that if it accuses a person of engaging in an immoral or bad act, it doesn't say if you accuse somebody of having a controversial viewpoint that that's somehow actionable. And he said if it had gone beyond that, which we fully agree with, that it would have raised First Amendment issues. But at the end of the day, it doesn't matter whether he's wrong on the First Amendment because he's certainly right on the common law. They have failed to state a claim under Ohio common law because Sweeney and Holloway, in the clearest possible terms, say if you lie about a public official in terms of his political acts, his political views, or his views on a question of public interest, that is not actionable defamation. And why is that? Because defamation involves saying that people have done something bad. A public official has embezzled money or taken a bribe. It doesn't involve saying that somebody holds a view on taxes or abortion or something else. Why is that? Because A, you're not hurting the person by saying he holds a view on raising taxes. Your opponent says it's like accusing Drayhouse of a heinous crime. Right. But that's exactly the kind of thing that the courts won't allow. They're not going to equate somebody who supports taxpayer-funded abortion of being a murderer. And if there was a community that was so intolerant that they couldn't tolerate opposing viewpoints, the courts are not going to conspire with those intolerant bigots and award damages to them. And let's think about the practical consequences of what he's talking about. There's one rule of defamation on the west side of Cincinnati and another rule of defamation on the east side of Cincinnati. You have to analyze what the voters will do. But the main reason we don't get juries into deciding these questions is because we don't allow juries to referee public policy debates. In this case, what they want the jury to do is engage in statutory interpretation. Look at the Affordable Care Act. And if they disagree with my client's view of a statutory interpretation, as this court does every day, they want them to pay damages to their opponents. They want juries, not voters, to decide what's in the Affordable Care Act. And going to your point, Judge Gilman, the innocent construction rule in terms of the truth of what we say makes it absolutely clear that we were entirely right about it, particularly as a matter of law. He and the district court engage in this very tendentious reading of what we said. We said the Act includes taxpayer-funded abortion. They go through the Act and they say, well, was there an appropriation for abortions only, and therefore we're wrong? Well, an innocent, reasonable interpretation of our statement is not that the appropriation is in the Act, but that it authorizes taxpayer-funded abortion. Under their view, it would be false to say that the Act has taxpayer-funded health insurance in it. Because the Act doesn't appropriate money for health insurance for low-income people, it just authorizes it. And you cannot engage in a very narrow view of what we said and say we're technically wrong. You have to say, is there a reasonable construction of what we said, i.e., could we have been referring to authorizing taxpayer-funded abortions as opposed to appropriating them? That's under the Innocent Construction Doctrine, which is well-established in Ohio under Holly at SEIU, and which this court in Briggs said is constitutionally required. You need to give an innocent construction so that we do not have juries resolving these contentious public policy issues. Tell me this, do you think that the district court went too far in declaring its new rule low? Do you have any authority that supports the district court's statement? It's Sweeney and Holloway. Sweeney said, Sweeney is an Ohio court decision that says, in that case they had said the congressman had opposed a judge because he was a foreign-born Jew. And they said, whether or not that's true doesn't matter, because you were describing a political act, and we do not allow public officials to come in and sue their citizens because they've misdescribed their records. I'm talking about the district court's new First Amendment rule, associating a political candidate with a mainstream political position, even if false, cannot constitute defamation. Do you have any authority that supports that new rule of First Amendment law? Well, I'm going to try one last time. That's Sweeney. They had associated a public official with a political view. Are you saying that's not a First Amendment question? I am making two points. The common law of Ohio doesn't allow you to bring those claims into court. I fully agree with the district court that if Ohio common law departed from Hine and these other cases and allowed you to bring these political public policy disputes into court, it absolutely would violate the First Amendment, as he points out under Alvarez. What is the holding of Alvarez? That the government cannot impose financial penalties on people who say untrue things about politics in election campaigns, because we don't bring every time one candidate says my opponent's lying about raising taxes into federal court and have democracy, we allow the voters to sort out the truth uninhibited by crippling damages awards in front of juries. Alvarez was the Stolen Valor Act case, right? Correct. That had nothing to do with politics. Well, no, but if you... That was a man claiming he had been awarded a Congressional Medal of Honor, right? Right. So that was a real assertion of fact that wasn't even political. If the government can't say that you lied about your own medals, then surely the government can't say that you're lying about your public policy events. I would direct you to the dissenting opinion, which said, look, we disagree with the majority on the Stolen Valor Act, but we would agree that if there was a law, as there used to be in Ohio until it was enjoined by the district court in this case, which set up a tribunal to figure out whether or not people have told the truths during political campaigns, that that would be unconstitutional. Now the reason Alvarez says we don't get at defamation cases is because they're talking about real defamation cases. If you're asserting a fact about the candidate, we never accused Mr. Driehaus of being corrupt or incompetent or anything like that. We said he voted for a law which we believe has taxpayer-funded abortions in it, which it does, and therefore we have not attacked him as a person. We have attacked his public policy views. So if we decided what we wanted to do was to decide this case on as narrow a ground as we could, you just said, well, it does include taxpayer-funded abortions. How much truth do you have to have to the statement in order for it to not be a false statement? On the innocent construction, if there's any reasonable basis, we win, and we are miles beyond any reasonable basis, just two points. Even if you accept his extraordinarily constricted view of what we said, that there needs to be an appropriation in the Act for abortions, they appropriated $5 billion to community health insurance, high-risk pools to do all kinds of services, including abortion. They gave $11 billion to community health centers for family planning services, including abortions. But don't take my word for it. Representative Driehaus insisted on a Stupak amendment to say none of these funds can be used for abortions. He demanded that the President put in an executive order saying none of these funds can be used for abortions. Well, if there was no abortion funding in the Act, then why in the world was Representative Driehaus saying you need to prevent that money from going to abortion? So unless Representative Driehaus is himself entirely irrational and chasing phantoms, we know that there was abortion funding in the Act. I haven't even talked about all the health insurance where they do have abortion under these health insurance plans that are federally subsidized. So there's just no way that this is not within the Innocent Construction Rule. The other point I'd like to make is there's a separate doctrine under Ohio law which says if it's substantially true, and by that they mean, as the Supreme Court put it in Masson, is the gist of what they said true? Would it be, is the thing that's allegedly defamatory true? Mr. Driehaus's argument is all of the pro-life voters on the West Sides of Cincinnati were offended by the fact that we said he supported a bill with abortions. He agrees that the bill authorizes abortion funding. Well, all of those pro-life voters would have been just as offended if he had voted for a bill that authorized, as opposed to directly appropriated money for abortion, so it is substantially true. All of this harm to his reputation would have occurred if we had said this money is authorized in the bill and therefore it's substantially true. Finally, these are not factual disputes about whether somebody did X, took some money. This is an interpretation of a federal statute. It is classic opinion, and you can't render a, you can't come into a defamatory assertion unless you can show, as the Supreme Court has emphasized repeatedly, a disprovable assertion of fact. In Time, Incorporated, they said if it's a reasonable interpretation, then it's an opinion, and people get to offer opinions, particularly about landmark legislation, all the time. And juries can't say, we disagree with your opinion about the Affordable Care Act. They are only authorized to decide facts. And the reason for that, again, is if you authorize juries to referee public policy debates, then every debate that goes on in Ohio, we could sue Representative Driehaus tomorrow for saying we lied, and then we could bring his assertions about us, about our ads, in front of a jury, or any candidate for governor who has a disagreement about whether he raised taxes or is in favor of gun control. All of those intensely political disputes that the Supreme Court has emphasized countless times needs to be decided in a free and uninhibited, robust political marketplace of ideas, would be decided by juries, where the plaintiff gets to pick sympathetic forms. How do you define a mainstream political view? All we were trying to do there, and all the district court was trying to say was, look, at the edges, there's problems, right? If you call somebody a communist or a fascist, okay, you could argue that that's a political view, but there are close questions where calling him a fascist or a communist might imply that he's behaving in a traitorous way. So all he was trying to say was, look, this is not even near the edges of saying that somebody's a communist. Saying that you support publicly funded abortions is a view that's shared by vast swaths of the community, so it's not even a close call. He was reserving the question, just to be careful, because he didn't want to erect a purely categorical rule that anybody could come in and say, communist, fascist, racist, and be protected by this. He says, look, as long as it's the kind of thing that people debate typically in elections, we are not going to put those typical election debates. And he has not argued, quite noticeably, that it is not a mainstream political view. It's held by millions of people, four members of the Supreme Court. All kinds of people think that if you're going to fund pregnancy and all kinds of other family planning devices, you should also be funding abortion. That's a very mainstream view. It's one that my clients obviously disagree with, but we are not presumptuous enough to say that our view is the only reasonable view in this context. And again, I just want to emphasize that however one comes out on that debate, at the end of a jury to interpret a statute, the most monumental piece of legislation that's been passed in the last 20 years. And if they disagree with our interpretation, they want us to pay him damages. There's no dispute about facts. There's no dispute that Driehaus voted for the bill. It's only a dispute about how you interpret the bill. And are we really going to deputize, for the first time in American history, juries to decide these complicated legal and public policy questions? Particularly when, as I've emphasized previously, our view of what's in the ACA is not only reasonable, it's compelling. It does authorize abortion along with these other services. And the only way we lose is if you interpret an act includes taxpayer funded abortion to mean to totally rewrite it and say it includes appropriations for abortions and nothing else. It is true that the community health services and the high risk insurance pools do cardiac surgery as well as abortion surgery, but we didn't say abortions only. We said including abortions. Therefore, there's no reasonable construction of our statement, which can be labeled false, much less by a jury. Thank you. Thank you, Counsel. Your Honors, Counsel was asked by Judge Gilman what authority he had under the First Amendment and he mentioned two cases, Alvarez and Sweeney. I want to take those in order. In Alvarez, in order to interpret this as supporting the categorical rule, you would have to ignore what the Supreme Court said, which was that defamation of public officials is one content-based restriction that we have always tolerated. So Alvarez doesn't scrap that, and it actually cites New York Times v. Sullivan for that. Then he cited the Sweeney case, and I want to clear up, Sweeney also doesn't spell out the categorical rule that the district court cites it for. If it made any pronouncement on Ohio defamation law, it was, as the Sweeney court itself said, on a very narrow, quote, technical rule of law having to do with the matter of proof of a claimed injury resulting from a claimed defamation publication. The technical rule it was citing was in order to show that the plaintiff was subjected to ridicule or contempt in a defamation case, you'd have to show, one, that his character was being attacked, and two, that he was being accused of either immorality or violating the law. That has not gained traction even with subsequent Ohio cases, as evidenced by the Murray case that we cite and the Condit case we cite, neither of which accused the people of any immorality or violations of the law. Sweeney didn't even take hold in Ohio. The biggest factor here that I think counsel overlooks is this was an accusation of hypocrisy. Judge Gilman, you mentioned the Hine case. In Hine, he wasn't accused of hypocrisy, but in Shields v. Bowles, they said that's the difference maker. If he's being accused of hypocrisy, betraying his principles, that is actionable. And here he mentions, well, we don't want to give over to nuts who think Steve Dreehouse is a murderer the ability to create a defamation action out of that. The reality is that's the way people here saw Steve Dreehouse after these statements are made, and the court should not close its eyes to that. In terms of what's mainstream, going back to that, if I accuse a vegetarian party candidate of eating meat, I've ruined her reputation. Now, what I've accused her of is mainstream, but I have ruined her reputation under the district court's rule she has no defamation claim, even if it was intentionally false. He mentioned opinion in the situation, the court dealt with that in its first summary judgment order by reviewing the four veil factors under the Ohio Constitution. There is no basis for this being called an opinion, especially, as the court said, given the fact the statement starts with five words, it is a fact that. And then finally, with respect to his argument about how to interpret the Affordable Care Act, this is a rather unusual situation that's dependent on an interpretation of the law. He wants that interpretation to be left over to lay people. Courts interpret laws. The district court treated as a question of law what is contained in the Affordable Care Act. This court should do the same. And all four of the provisions that he has mentioned do not mention abortion or provide funding for abortion. Thank you, Your Honors. Thank you, Counsel. The case will be submitted. Clerk may call the next case.